**16 MAG 1718**   ORIGINAL

Approved:   _Margaret M_
            MARGARET GRAHAM/ KARIN PORTLOCK
            Assistant United States Attorneys

Before:     HONORABLE KEVIN NATHANIEL FOX
            United States Magistrate Judge
            Southern District of New York

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :    SEALED COMPLAINT

        - v. -                    :    Violation of
                                       18 U.S.C. §§ 1029(a)(2),
MIRZA BAIG,                       :    (b)(2), and 2
AMIR MIR,
FIAZ KHAN,                        :    COUNTY OF OFFENSE:
     a/k/a "Poul,"                     NEW YORK
                                  :
          Defendants.
                                  :

- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

       JOHN KAROUNOS, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), and charges as follows:

COUNT ONE
(Access Device Fraud)

       1.   From at least in or about December 2010 up to and
including the present, in the Southern District of New York and
elsewhere, MIRZA BAIG, AMIR MIR, and FIAZ KHAN, a/k/a "Poul,"
the defendants, and others known and unknown, knowingly and with
intent to defraud did traffic in and use unauthorized access
devices, and by such conduct did obtain something of value
aggregating $1,000 and more, to wit, BAIG, MIR, and KHAN used
credit cards obtained by fraudulent means to unlawfully obtain
over $500,000.

       (Title 18, United States Code, Sections 1029(a)(2) and 2.)

COUNT TWO
(Conspiracy to Commit Access Device Fraud)

2.    From at least in or about December 2010 up to and including the present, in the Southern District of New York and elsewhere, MIRZA BAIG, AMIR MIR, and FIAZ KHAN, a/k/a "Poul," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit access device fraud, in violation of Title 18, United States Code, Section 1029(a)(2).

3.    It was a part and an object of the conspiracy that MIRZA BAIG, AMIR MIR, and FIAZ KHAN, a/k/a "Poul," the defendants, and others known and unknown, knowingly and with intent to defraud would and did traffic in and use unauthorized access devices and by such conduct did obtain something of value aggregating $1,000 and more, to wit, BAIG, MIR, and KHAN used credit cards obtained by fraudulent means to unlawfully obtain over $500,000.

Overt Act

4.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a.    On or about December 17, 2014, MIRZA BAIG, the defendant, applied for a Chase credit card using fraudulent means.

b.    On or about March 5, 2015, AMIR MIR, the defendant, deposited two checks drawn on a bank account opened using fraudulent means, as a payment on a Chase credit card obtained using fraudulent means.

c.    On or about January 20, 2016, FIAZ KHAN, a/k/a/ "Poul," the defendant, fraudulently charged approximately $3,455 to a credit card that KHAN believed was obtained using fraudulent means.

(Title 18, United States Code, Sections 1029(b)(2).)

2

The bases for my knowledge and the foregoing charge are, in part, as follows:

5.   I am a Special Agent with the FBI and have worked on numerous criminal investigations involving bank fraud, credit card fraud, and identity theft.

6.   I have been involved in the investigation of the offenses charged in this Complaint.  I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents, and from my conversations with fellow agents and other witnesses.  Because this affidavit is submitted for the limited purpose of demonstrating probable cause, I have not included details of every aspect of the investigation.  Where I relate statements, conversations, and actions of others, those statements, conversations, and actions are related in substance and in part, except where otherwise noted.

7.   I am familiar with, among other financial frauds, identity theft schemes wherein the conspirators create a "synthetic identity" by taking a fake name and/or date of birth and combining this information with either (i) another person's Social Security number ("SSN"); or (ii) a SSN that has not yet been issued to a person.  The conspirators then open credit card accounts and bank accounts using this synthetic identity, and use these accounts to commit various financial frauds.

8.   The conspirators often use a credit card opened using a synthetic identity (the "Synthetic Credit Card") to "purchase" fictitious goods at a collusive merchant.  The credit card company is billed by the merchant for the non-existent goods, and the cardholder and the collusive merchant then split the resulting proceeds from the credit card company.

9.   Often, the conspirators make fraudulent "payments" to the Synthetic Credit Card, using fraudulent checks from the account of a different synthetic identity.  Because the credit card company believes the account holder to be paying down his or her balance, the company increases the spending limit on the Synthetic Credit Card.  The credit card company only later realizes that the checks are fraudulent, after it has already increased the spending limit.

10.  Once the spending limits are sufficiently high for the Synthetic Credit Cards associated with a synthetic identity, the conspirators charge all Synthetic Credit Cards for that identity up to their spending limits and stop using that synthetic identity.

11.  From reviewing records obtained from Chase Bank, I have learned, among other things, the following:

a.  On or about December 17, 2014, a Chase credit card was issued to "Guarav Aaip" (the "Aaip Chase Card").  The credit card application stated that Aaip lived at an address on Saint Nicholas Avenue in New York, New York (the "Saint Nicholas Address").  The application was submitted using an IP address beginning with 173, which was registered in the name of the wife of MIRZA BAIG, the defendant, to a property owned in the name of BAIG's wife.

b.  On or about February 19, 2015, a charge for approximately $8,500 was made on the Aaip Chase Card at King Khan Auto Repair.

c.  On or about March 3, 2015, a charge for approximately $9,645.89 was made on the Aaip Chase Card at King Khan Auto Repair.

d.  I have reviewed photographs from Chase Bank, which show an individual who I believe to be AMIR MIR, the defendant, depositing two checks drawn on the Navy Federal Credit Union of "Murali Karthik" (the "Karthik Navy Account") as payment on the Aaip Chase Card on or about March 5, 2015.[1]  Chase later determined that the Karthik Navy Account did not have sufficient funds to satisfy these checks.

12.  From reviewing records obtained from Navy Federal Credit Union, I have learned that the Karthik Navy Account was opened in or about August 2014 using the Saint Nicholas Address.

13.  I have reviewed the application submitted by King Khan Auto Repair to American Express for a merchant account in or about May 2012.  The application lists King Khan Auto Repair's owner as "Fiaz Khan," an address on 38th Avenue in Queens, New

---

[1]  I have compared these bank surveillance photographs to photographs of MIR maintained by the New York State Department of Motor Vehicles.

York (the "38th Avenue Address"), and a phone number ending in -7788 (the "-7788 Number").

14. From reviewing records obtained from the Social Security Administration, I have learned, among other things, the following:

    a.   The Social Security number used on the application for the Aaip Chase Card belongs to a minor who is not named Guarav Aaip.

    b.   The Social Security number used on the application for the Karthik Navy Account belongs to a minor who is not named Murali Karthik.

15. I have spoken with a cooperating witness (the "CW")[2] and have learned the following, in sum and substance:

    a.   On or about January 20, 2016, the CW met with FIAZ KHAN, a/k/a "Poul," the defendant, at an auto repair shop at the 38th Avenue Address. The CW handed KHAN a credit card provided by law enforcement, which KHAN charged for approximately $3,455 (the "Auto Shop Charge"). No goods were exchanged. KHAN handed the CW a business card for "New York Auto Repair," which listed the 38th Avenue Address and the -7788 Number. I have further reviewed summaries of translations of a consensual recording of this conversation.

    b.   On or about January 26, 2016, the CW called MIRZA BAIG, the defendant, to ask if the CW could call KHAN to pick up the money. BAIG stated that he would see KHAN. I have further reviewed summaries of translations of a consensual recording of this conversation.

    c.   Later that day, BAIG informed the CW that KHAN had arrived with the money. The CW went outside and met with KHAN, who handed the CW approximately $2,580 in cash. The CW understood this to be the CW's share of the Auto Shop Charge.

---

[2] The CW has pleaded guilty pursuant to a cooperation agreement with the Government to access device fraud, and is cooperating with the Government in the hopes of obtaining a reduced sentence. The information provided by the CW has proven reliable and has been corroborated by other independent evidence, including recordings of conversations with several of the defendants charged herein.

d.    On or about February 5, 2016, the CW again met with KHAN at New York Auto Repair at the 38th Avenue Address. The CW handed KHAN a different credit card provided by law enforcement, which KHAN charged for approximately $3,895.  No goods were exchanged.  KHAN asked where BAIG was.  I have further reviewed summaries of translations of a consensual recording of this conversation.

16.    Based on this information and my familiarity with synthetic identity fraud, I believe that "Guarav Aaip" and "Murali Karthik" are synthetic identities created to perpetrate credit card fraud and bank fraud, and that King Khan Auto Repair and New York Auto Repair are collusive merchants.

17.    I have reviewed photographs from Affinity Credit Union, showing an individual who I believe to be MIRZA BAIG, the defendant, depositing thirteen checks into four different accounts held in the names of other individuals, on five different occasions between December 2010 and December 2013.[3] These thirteen checks were all later determined by Affinity Credit Union to be fraudulent.  All four accounts were later closed with significant losses to Affinity Credit Union.  Based on my familiarity with synthetic identity fraud, I believe that these four accounts were opened using synthetic identities, and were created to perpetrate credit card fraud and bank fraud.

---

[3] I have compared these bank surveillance photographs to photographs of BAIG maintained by the New York State Department of Motor Vehicles.

WHEREFORE, the deponent respectfully requests that warrants issue for the arrest of MIRZA BAIG, AMIR MIR, and FIAZ KHAN, a/k/a "Poul," the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

JOHN KAROUNOS
Special Agent
Federal Bureau of Investigation


Sworn to before me this
11th day of March, 2016


HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK